[Civ. No. 41103. Second Dist., Div. Four. Aug. 24, 1973.]

SHELDON B. HENTSCHKE, Plaintiff and Appellant, v.
JOHN M. SINK et al., Defendants and Respondents.

## COUNSEL

Harris, Parke & Barnes and Stanley T. Tomlinson for Plaintiff and Appellant.

George P. Kading, County Counsel, and Don H. Vickers, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**KINGSLEY, J.**—Petitioner, who holds valid credentials both as a classroom teacher and as an administrator, had, prior to the 1971-1972 school year, been acting as dean of students at a high school in the Santa Barbara High School District. In October of 1971 he was advised by the superintendent of schools of that district that he would not be so reassigned for the school year 1972-1973, but that his assignment for the 1972-1973 year would be as a classroom teacher. On February 25, 1972, petitioner requested of the superintendent a written statement of the reasons for such action. He also requested a hearing before the board of the district with respect to such action. The hearing was set for March 7, 1972; the statement of reasons was furnished to him on March 6th.[1] On March 7, 1972, the Superintendent's action was confirmed and notice of that confirmation was given to petitioner on March 8th.

---

[1] We attach, as an appendix, the statement of reasons furnished to petitioner.

It should be noted that there is no suggestion in the record or briefs that there was any covert reason for the administrative action. Nothing herein is intended to determine a case in which action is shown to have been motivated by some improper factor.

Petitioner then brought the present action seeking, in count I, a writ of mandate to compel his reassignment to his administrative status and, in count II, declaratory relief as to his rights, duties and status. A demurrer to that complaint was sustained without leave to amend; he has appealed from the resulting order of dismissal. For the reasons set forth below, we affirm.

The Legislature has provided elaborately for the tenure status of employees of school districts and for the procedure to be followed in cases of their dismissal or demotion. As distinguished from employees holding permanent status as classroom teachers, the provisions as to certificated administrators provide only as follows:

Education Code section 13314: "A permanent employee when advanced from a teaching position to an administrative or supervisory position, or assigned any special or other type of work, or given special classification or designation requiring certification qualifications, shall retain his permanent classification as a classroom teacher."

Education Code section 13314.3: "(a) A permanent employee not qualified to render service as a classroom teacher, when advanced to an administrative or supervisory position, or assigned any special or other type of work, or given special classification or designation requiring certification qualifications, shall retain his permanent classification for the performance of the type of service for which he was qualified prior to such advancement, assignment, or special classification or designation.

"(b) If an employee is authorized to render service in more than one type of position for which certification qualifications are required, either by virtue of his possession of one certification document authorizing service in two or more of such positions, or by virtue of his possession of separate certification documents authorizing service in two or more such positions, or any combination thereof, he shall, upon satisfying all other requirements prescribed by law, acquire permanent status as follows:

"(1) If he is authorized to render service as a classroom teacher, he shall acquire permanent status as a classroom teacher.

"(2) If he is not authorized to render service as a classroom teacher, he shall acquire permanent status below the administrative or supervisory level as a staff employee with multiple qualifications. His right to serve in one or more of the positions for which he is qualified to serve shall be subject to the power of assignment of the school district governing board."

Education Code section 13314.5: "A permanent employee, as specified

in Section 13314.3, when advanced to an administrative or supervisory position requiring certification qualifications, or assigned any special or other type of work requiring certification qualifications, or given special classification or designation requiring certification qualifications, shall retain his permanent classification as specified in Section 13314.3.

"If such a person is advanced to an administrative or supervisory position not requiring certification qualifications, is assigned any special or other type of work not requiring certification qualifications, or is given special classification or designation not requiring certification qualifications, his right to retain permanent classification shall be governed by the provisions of Article 4 (commencing with Section 13050) of Chapter 1 of this division."

Education Code section 13314.7: "Whenever a person employed in an administrative or supervisory position requiring certification qualifications is transferred to a teaching position, the governing board of the school district shall give such employee, when requested by him, a written statement of the reasons for such transfer."

Education Code section 13443.6: "Unless a certificated employee holding a position requiring an administrative or supervisory credential is sent written notice deposited in the United States registered mail with postage prepaid and addressed to his last known address by March 15 that he may be released from his position for the following school year, he shall be continued in such position. The provisions of this section do not apply to a certificated employee who holds a written contract with an expiration date beyond the current school year or to the termination of employment pursuant to Section 13447. A certificated employee serving under Section 946 shall be notified by March 1 if the governing board determines on an individual basis that he may be released for the following school year."

 We think it clear that, as opposed to classroom teachers, an administrator attains no tenure in his status as such. He serves as an administrator at the pleasure of the appointing power. Nothing in the statutes above quoted limits the authority of the appointing power to remove an administrator for any reason satisfactory to that appointing power; nothing in the statutes entitles an administrator, so removed, to any hearing, other than the requirement that, on request, he be furnished with a statement of the reasons for his reassignment to a different status.[2]

---

[2]In addition to the statutory provisions quoted in the text, petitioner relies on a provision in the district's rules and regulations, which reads as follows:
"Except as provided in 14-b, [dealing with involuntary transfers occasioned by

The distinction is not without reason. Certification as a classroom teacher and permanent status as such come after proof of teaching capacity; that status does not call for day-to-day cooperation in a wide variety of administrative decisions, often dealing with novel situations. But a second or third level administrator bears to his superiors a relationship of the most intimate nature, requiring complete trust by the top administrators in the judgment and cooperative nature of the subordinate. The loss of that trust is not a matter susceptible of proof such as is involved in the cases where a classroom teacher is dismissed or demoted for objective acts of misconduct. To introduce into the administrative structure the elements of discharge for "cause" and of formal hearing would be to make effective school administration impossible. The statutes do not require that.

The decided cases in California sustain our holding. (*Griffin* v. *Los Angeles etc. Sch. Dist.* (1942) 53 Cal.App.2d 350 [127 P.2d 939]; and see *Holbrook* v. *Board of Education* (1951) 37 Cal.2d 316, 334 [231 P.2d 853].)

We recognize that, as petitioner contends, his demotion involves a reduction in compensation and some loss of professional standing. But those consequences follow in every case of the discharge of any employee-at-will. We are not persuaded that public school administrators hold some kind of special status that entitles them, as a matter of constitutional right, to more formality in their transfer than the law affords to employees in general.

As we have indicated above, petitioner's second cause of action sounded in declaratory relief. As the cases say, once a disputed issue appears, the trial court should not sustain a demurrer to such a cause of action. However, the declaration sought was only the clarification of petitioner's status and rights. Our opinion herein affords him the answer to that request. There is no need, now, to add a duplication in the form of a superior court judgment.

The judgment (order of dismissal) is affirmed.

Files, P. J., and Jefferson, J., concurred.

reduction in staff, not here applicable] involuntary transfer of certificated personnel shall be for valid reasons which shall be discussed in advance by the certificated personnel involved and the Assistant Superintendent of Personnel Services."

Petitioner did not claim in the trial court any violation of the "discussion" provision; for the reasons set forth in the text of this opinion, the reasons assigned by the superintendent were "valid."

### Appendix

"My request to replace Mr. Sheldon Hentschke as a member of the San Marcos High School administrative staff is based as follows:

"To approach optimum success in the direction of, the leadership of, and the effective operation of a complex secondary school demands a team of close knit administrators. The administrative team must work in an environment of mutual confidence, shared philosophy, total cooperation, and effective inter-personal relationships. Although this environment should be mutually realized by any and all combinations of the team members, it is particularly vital between the principal and each individual subadministrator.

"As you know, I have been concerned regarding the effectiveness as well as the operation of the office of the Dean of Students for some time. I have on occasion shifted administrative responsibilities in the dean's office in a continuing attempt to maintain a reasonable working relationship.

"My decision to replace Mr. Hentschke as a member of the San Marcos High School administration was made after lengthy and deliberate serious review. I fully realized the implications of that decision. It had to be implemented in the best interests of the total program on the San Marcos campus.

"Specifically:

"I. I do not have confidence in Mr. Hentschke's judgment. I am in the position of having to question and, on occasion, over-rule.

"2. I can no longer put together an equitable administrative assignment in which I (or the administrative staff) feels comfortable.

"3. I do not have confidence in the present administration of work orders, general maintenance and operations.

"4. Mr. Hentschke and I do not agree on my basic concept of low key-non autocratic administration.

"5. I have been in basic disagreement with too many decisions from Mr. Hentschke's office, yet have had to either support the decision, or antagonize the office by changing the decision.

"6. On occasion, over reaction to incidents has led to a sometimes expressed lack of confidence in the administration of the school by members of our community.

"7. The working relationship with Mr. Hentschke has been deteriorating rather than improving.

"8. I am concerned regarding Mr. Hentschke's relations with some district offices.

"9. I do not receive regular and adequate information from Mr. Hentschke's office.

"10. The three other sub-administrators of the San Marcos staff are currently forced to pick up areas of Mr. Hentschke's assignment.

"11. In recent weeks, the San Marcos staff has been placed in the unfortunate position of expressing personal loyalties in an area of personnel decision. The results have not improved our school's operation.

"12. Recent judgments by Mr. Hentschke in terms of this decision have been extremely unsettling to the staff. Mr. Hentschke has vacillated to extremes since October in determining his methods of handling my decision. I feel his relationships on this campus would now be impossible."